## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

**GARY LITTLE,**                         )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )                **No. CIV 07-177-RAW-SPS**
                                          )
**JUSTIN JONES, et al.,**                )
                                          )
                    Defendants.           )

FILED

MAR 2 9 2012

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By————————
Deputy Clerk

### OPINION AND ORDER

The Tenth Circuit Court of Appeals reversed in part and remanded this court's order dismissing plaintiff's complaint concerning the alleged denial of his request for a religious diet. *Little v. Jones*, 607 F.3d 1245 (10th Cir. 2010). Now before the court is plaintiff's amended complaint [Docket No. 74], his motion for temporary restraining order [Docket No. 102], the defendants' motion to dismiss or for summary judgment [Docket No. 99], the parties' responses [Docket Nos. 105, 108, 130, 132], and a special report [Docket Nos. 95, 96, and 97], which was prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at the Northeast Oklahoma Correctional Center in Vinita, Oklahoma, Oklahoma, brought this action *pro se* under the authority of 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, seeking compensatory damages and injunctive relief for alleged constitutional violations during his incarceration at Mack Alford Correctional Center (MACC) in Stringtown, Oklahoma, and James Crabtree Correctional Center (JCCC) in Helena, Oklahoma. The 15 defendants are Justin Jones, DOC director; Edward Evans, DOC Associate Director of Field Operations; Kelly Curry, JCCC Food Supervisor; Nick Spalding, JCCC Food Supervisor; Chester Cotton, JCCC Food Supervisor;

Ms. Bealderson, JCCC Food Supervisor;[1] Debbie Morton Director's Designee at the DOC Administrative Review Authority; Greg Province, MACC Warden; Anita Trammell, MACC Deputy Warden; Bob Biberstine, MACC Chaplain; Donna Visotski, MACC Food Supervisor; Regina Hicks, MACC Food Supervisor;   Cecil Gibbons, MACC Food Supervisor; Ms. Wyse, MACC Food Supervisor; and Janice Hill, DOC Dietitian.[2]

Plaintiff alleges in Count I of his complaint that he was incarcerated at MACC from February 2007 to July 25, 2007. While at that facility, he made numerous verbal requests to the defendants for a vegan diet, in accordance with his Seventh-day Adventist (SAD) religion. Each request was denied, so he applied for a vegan religious diet, which also was denied. He also submitted Requests to Staff, Grievance Reports, and appeals to no avail.

After numerous transfers to different facilities, he was housed at JCCC, where he attempted from March 13, 2010, to January 3, 2011 to get JCCC Food Supervisor Don Letourneau to assist in obtaining the religious diet. Some of his Requests to Staff went unanswered, but plaintiff was refused copies of the documents to prove the Requests to Staff had been submitted. On June 18, 2009, he submitted a letter to Defendants Edward Evans and Janice Hill, requesting a vegan vegetarian diet that had been approved by Chaplain Larry Adams. [Docket No. 74 at 15-16]. He also complained in the letter of the lack of variety in the meals and questioned whether the meals he was receiving were nutritious. He claims he received no response to the letter. He further asserts the facility food supervisors used an unapproved menu that did not conform to his previously approved vegetarian diet of no fish, eggs, or dairy products. [Docket No. 74 at 25-28]. He was served brown beans and white beans at least twice a day, and he refused meals that were unacceptable to him. [Docket No.

---

[1] Defendant Bealderson has not been served [Docket No. 87].

[2] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

74 at 29-34].

Plaintiff alleges he received fewer calories than other inmates, and he went hungry because of the defendants' refusal to accommodate him. [Docket No. 74 at 7]. Although he received double portions of vegetables, he claims he had to contend with Defendant Chester Cotton over what is a vegetable and what is a fruit. Cotton allegedly believed potatoes were a fruit, and he denied plaintiff extra portions because of his lack of knowledge or training about food. If foods were being served on the line, and plaintiff asked for a substitution, he was denied because it would be "special preparation." In addition, Defendants Curry, Cotton, Spaulding, and Bealderson allegedly were not trained in the areas of nutrition and diet, and these supervisors used unapproved menus. [Docket No. 74 at 9].

Plaintiff observed that the facility complied with the dietary requirements of other religions, and dry cereal, sunflower kernels, peanuts, oranges, apples, salads, and grapefruit were available, but he could not include them in his meals. [Docket No. 74 at 7]. He, instead, allegedly only received double portions of vegetables for his religious diet. [Docket No. 74 at 6-7].

In Count II plaintiff alleges the defendants violated his rights under RLUIPA through their repeated denial of his legitimate and proper requests for a vegan religious diet. He claims in Count III that the defendants' denial of his religious vegan diet also violated his rights under Okla. Stat. tit. 51, § 253.[3]

---

[3] Okla. Stat. tit. 51, § 253 provides:

A. Except as provided in subsection B of this section, no governmental entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability.

B. No governmental entity shall substantially burden a person's free exercise of religion unless it demonstrates that application of the burden to the person is:

1. Essential to further a compelling governmental interest; and
2. The least restrictive means of furthering that compelling governmental interest.

3

**Standard of Review**

The defendants have moved the court for dismissal of this action or in the alternative for summary judgment. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

**"JHCC" Defendants**

As an initial matter, plaintiff's amended complaint names defendants from Mack Alford Correctional Center (MACC) and James Crabtree Correctional Center (JCCC). The

4

defendants' motion, however, repeatedly references plaintiff's claims against "JHCC," the initials for Joseph Harp Correctional Center in Lexington, Oklahoma. The JHCC designation also is in the titles of the motion's Propositions III and IV. [Docket No. 99 at 3].

In his response to the motion, plaintiff states, "All Propositions concerning JHCC as follows Proposition 3 and 4 are not an [sic] issue here. Plaintiff is not at JHCC nor has he been for over 2 years, these claims should be Dismissed." [Docket No. 130 at 13]. In their reply to plaintiff's response, the defendants apparently construed plaintiff's statement as a request to dismiss all claims against JCCC defendants, who also are called JHCC defendants in the defendants' reply. [Docket No. 132 at 1, 5]. To the contrary, the court finds plaintiff merely was clarifying that there are no claims against *JHCC* personnel.

**Motion for Temporary Restraining Order**

Plaintiff alleges in his motion for a temporary restraining order [Docket No. 102] that he was transferred back to MACC after the JCCC defendants were served with his amended complaint. He claims he was told he would be transferred again, which plaintiff's believes was intended to make him miss court-imposed deadlines. In addition, MACC officials have refused to comply with a prescribed snack. He asked the court to order MACC officials to provide nutritious meals, suitable protein substitutes, and double portions of vegetables, without the threat of retaliation or being placed in segregated housing.

The record shows that plaintiff no longer is incarcerated at MACC. Because he has been transferred to another facility, the court finds this claim for injunctive relief is moot. *See Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (citing *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994)). *See also Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991); *White v. State*, 82 F.3d 364, 366 (10th Cir. 1996). Therefore, his motion for a temporary restraining order is denied.

**JCCC Defendants**

The defendants allege plaintiff's claims against JHCC personnel, presumably meaning JCCC personnel, must be dismissed for his failure to exhaust available administrative

5

remedies. [Docket No. 99 at 27]. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff. If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

Becky Guffy, the JCCC Grievance Manager, states by affidavit in the special report that she has reviewed the grievances plaintiff submitted at that facility. [Docket No. 95-2 at 13]. She received Grievance No. JCCC-10-32 from plaintiff regarding food service sanitation. It was returned unanswered, because he was on grievance restriction and a proper affidavit in compliance with the restriction was not included with the grievance. Plaintiff had the opportunity to correct the deficiency, but it was not resubmitted.

Ms. Guffy further states she never received a grievance regarding the availability of dry cereal, sunflower kernels, peanuts, oranges, apples, salads, and grapefruit at JCCC. In addition, plaintiff never submitted a grievance concerning the nutrition knowledge of Chester Cotton, Nick Spaulding, or Glenva Balderstadt.

Plaintiff alleges in his response to the motion that he was unable to exhaust his

6

administrative remedies, because the DOC Offender Grievance Policy prohibits submission of a Request to Staff about matters that are in the course of litigation. Pursuant to DOC OP-090124(II)(B)(2), "[g]rievances may not be submitted about matters that are in the course of litigation." He has attached numerous copies of Requests to Staff from JCCC, but he has failed to show he filed, or attempted to file, any grievances concerning the issues in this lawsuit prior to filing his amended complaint. While the Grievance Policy prohibits the submission of grievances on claims in litigation, there is no evidence plaintiff attempted to exhaust his JCCC claims prior to adding those issues and defendants to this case.

The court, therefore, finds plaintiff failed to exhaust the administrative remedies for his JCCC claims prior to filing his amended complaint. Those defendants and claims are dismissed from this action without prejudice, pursuant to 42 U.S.C. § 1997e(a).

**Injunctive Relief Request in Amended Complaint**

Plaintiff's amended complaint also asks for an injunction requiring the JCCC defendants to provide him a vegan religious diet that conforms with the tenets of his Seventh-day Adventist religion and beliefs. The defendants assert this request has been made moot by DOC and JHCC's [sic] provision of vegan meals, and plaintiff does not dispute the defendants' position.

"In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb*, 600 F.3d at 1311. Because plaintiff no longer is incarcerated at JCCC, the court finds the request for injunctive relief in his amended complaint is moot.

**Sincerely Held Beliefs**

The defendants allege plaintiff has failed to state a valid claim, because he is insincere in his beliefs:

> Mr. Little's Amended Complaint alleges, without support, that he is "a documented, sincere 7th Day Adventist." Amended Complaint at 6. In actuality, Plaintiff is a virulent racist who consumes alcohol. Racism and

7

alcohol consumption are contrary to the fundamental beliefs of SAD, and engaging in either is sufficient cause for dismissal from the church. Because Mr. Little has engaged in both practices during his incarceration, he is incapable of meeting his burden of stating a claim for a prima facie violation of his rights under RLUIPA or the Free Exercise Clause. Therefore, these claims should be dismissed.

[Docket No. 99 at 12].

Under the First Amendment, an inmate must show his beliefs are "religious in nature" and "sincerely held." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). The same showing is required under RLUIPA. *Abdulhaseeb*, 600 F.3d at 1312. Because plaintiff has offered nothing more than an unsupported assertion that he genuinely subscribes to the tenets of Seventh-day Adventism, the court may inquire into the sincerity of his beliefs. *Id.* at 1314 n.6; *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006).

According to the special report, the Seventh-day Adventist Manual gives the definition of Christian Behavior on page 130:

We are called to be a godly people who think, feel, and act in harmony with the principles of heaven. For the Spirit to recreate in us the character of our Lord, we involve ourselves only in those things which will produce Christ-like purity, health, and joy in our lives. This means our amusement and entertainment should meet the highest standards of Christian taste and beauty. While recognizing cultural differences, our dress is to be simple, modest, and neat, befitting those whose true beauty does not consist of outward adornment but in the imperishable ornament of a gentle and quiet spirit. It also means that because our bodies are the temples of the Holy Spirit, we are to care for them intelligently. Along with adequate exercise and rest, we are to adopt the most healthful diet possible and abstain from the unclean foods identified in the Scriptures. Since alcoholic beverages, tobacco, and the irresponsible use of drugs and narcotics are harmful to our bodies, we are to abstain from them as well. Instead, we are to engage in whatever brings our thoughts and bodies into the discipline of Christ, who desires our wholesomeness, joy, and goodness.

[Docket No. 95 at 10-11].

The defendants assert the Seventh and Eighth Circuits have held that an inmate who voluntarily departs from his religious diet can suspend the inmate's religious meals. *Brown-El v. Harris*, 26 F.3d 68, 69-70 (8th Cir. 1994); *Daly v. Davis*, 2009 WL 773880, slip op. (7th Cir. Mar. 25, 2009). Because plaintiff allegedly was caught in possession of homemade beer,

the defendants claim he voluntarily departed from his religious diet. Following the reasoning of the Seventh and Eighth Circuits, they contend the DOC may deny plaintiff a vegan diet, and any denial or inadequacy of the diet does not substantially burden him under the First Amendment or RLUIPA.

Plaintiff maintains he does not drink alcohol, and he has not done so for years, and it was his cellmate who used plaintiff's ice chest to make beer. He also asserts he never has had a positive urine test.

The defendants further challenge plaintiff's sincerity in his religious beliefs, because he has several racial supremacist tattoos, including a swastika, an SS lightning bolt, and a combined Ku Klux Klan and SS tattoo. Prior to the initiation of this lawsuit, he allegedly listed his religion as Aryan, and throughout the pendency of this lawsuit, he allegedly has proclaimed his membership in the KKK and threatened staff members with reprisal from the group. He frequently has used racial slurs, derogatory terms, and vulgarities directed at correctional officers. Although prayer services were offered, including SAD services, plaintiff only attended one service at his facility.

Plaintiff contends his appearance and behavior are based on his need to survive in prison, which is a violent, racially tense environment, but that does not mean he is not a sincere believer. He maintains he has to align himself with a group in order to survive, and belonging to the wrong religion can get one killed.

> The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment, let alone a motion to dismiss. We have said that summary dismissal on the sincerity prong is appropriate only in the very rare case[ ] in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." On this record, such a determination is unwarranted.

*Kay*, 500 F.3d at 1219-20.

In their reply [Docket No. 132] to plaintiff's response to the motion to dismiss, the defendants assert plaintiff has admitted he is not sincere in his professed religious beliefs.

9

The defendants, however, have misconstrued plaintiff's response. A more careful reading of the response reveals plaintiff stated he "has never made a claim [that] 'in order to practice my religion I need a Vegan diet.'" [Docket No. 130 at 2]. His claim, instead, is that he eats a vegan diet, because it "is rooted in the SDA tenets, it is recognized as an alternative diet by my religion, finally, it is how I was raised to believe I should eat." [Docket No. 130 at 3]. He has attached a copy of the Guidelines for the Dietary Requirements of Seventh-day Adventists in Public Institution, which lists a total vegetarian/vegan diet as an alternative dietary practice. [Docket No. 130 at 19].

After careful review the court finds the defendants have failed to show the absence of a genuine issue regarding this material fact. Therefore, summary judgment cannot be granted on whether plaintiff's religious beliefs are sincerely held.

## Damages

The defendants contend plaintiff's claim for compensatory damages is barred by the PLRA, because he has not shown a physical injury, as required by 42 U.S.C. § 1997e(e).[4] The PLRA limits an inmate's ability to recover compensatory damages for nonphysical harms such as mental or emotional injuries. *Searles v. Van Bebber*, 251 F.3d 869, 875-77 (10th Cir. 2001). *See also Lawson v. Engleman*, 67 Fed. Appx. 524 526-27 (10th Cir. 2003) ("We conclude that [the damages] claim was properly dismissed. While claims for mental and emotional distress are cognizable under § 1983, under § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'") (citation omitted)). The *Searles* court also held that in the absence of a showing of physical injury, § 1997e(e) does not bar recovery of nominal or punitive damages for a constitutional violation. *Searles*, 251 F.3d at 878-79. Plaintiff, however, did not request nominal or punitive damages in his amended complaint.

---

[4] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

10

Plaintiff alleges the defendants caused him mental and emotional injury by denying or restricting the exercise of his rights. Although he has not presented documentation, he further alleges he has suffered great weight losses over a period of two and one-half years. He also admits he has refused meals that he found unacceptable. The defendants have not responded to his claim of weight loss as a physical injury.

A prisoner "cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F.Supp.2d 1226, 1238 (D. Colo. 2009). Section 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress." *Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that appetite loss, weight loss, and insomnia after an alleged wrongful act by prison officials did not constitute "physical injury under § 1997e(e)). Plaintiff, however, has not alleged his weight loss resulted from his mental and emotional distress. Instead, he apparently is claiming the weight loss was caused by a lack of food that conformed to his religious beliefs.

Here, the court finds summary judgment on the issue of compensatory damages would be premature. The court further finds that plaintiff should be allowed to file an amended complaint to add requests for nominal and punitive damages. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999) (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997)).

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.     The defendants' motion for summary judgment [Docket No. 99] is GRANTED with respect to plaintiff's claims concerning James Crabtree Correctional Center, and his claims against the JCCC defendants are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

2.     Plaintiff's motion for a temporary restraining order concerning MACC

11

defendants [Docket No. 102] and his request for injunctive relief in the amended complaint concerning the JCCC defendants [Docket No. 74] are DENIED as moot.

3.   The defendants' motion for summary judgment is DENIED WITHOUT PREJUDICE with respect to their claim that plaintiff's beliefs are not sincerely held.

4.   The defendants' motion for summary judgment is DENIED WITHOUT PREJUDICE with respect to plaintiff's claim for compensatory damages.

5.   All remaining pending motions are DENIED WITHOUT PREJUDICE.

6.   Plaintiff is granted leave to file a second amended complaint to add requests for nominal and punitive damages and to set forth more clearly his alleged injuries.  The amended complaint may not include claims that have been dismissed by this Opinion and Order.  The second amended complaint must include all the allegations and supporting material to be considered by the court, and it may not reference or attempt to incorporate material from plaintiff's original or first amended complaint.  *See* Local Rule 9.2(c).  The Court Clerk is directed to send plaintiff a form for filing an amended complaint.  Plaintiff is granted twenty-one (21) days to file his second amended complaint.

**IT IS SO ORDERED** this _29th_ day of March 2012.

RONALD A. WHITE
**UNITED STATES DISTRICT JUDGE**